UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
IN NASHVILLE

| | |
|---|---|
| DOROTHY FRAME,<br><br>*Plaintiff,*<br><br>v.<br><br>LABORERS LOCAL UNION 576 &<br>LABORERS' INTERNATIONAL UNION<br>OF NORTH AMERICA,<br><br>*Defendants,* | Civil Action No.<br><br>COMPLAINT FOR<br>DECLARATORY,<br>MONETARY, AND<br>INJUNCTIVE RELIEF<br><br>CIVIL RIGHTS<br>(42 U.S.C. § 2000e) |

Dorothy Frame alleges:

## I. Nature of the Case

1.     This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* to redress religious discrimination. The Plaintiff, Dorothy Frame, holds sincere religious beliefs that conflict with joining or supporting the Defendants, Laborers Local Union 576 and Laborers International Union of North America ("Unions"). Ms. Frame's employer, J & J Worldwide Service ("Employer"), entered a collective bargaining agreement with the Unions requiring employees to financially support the Unions or suffer discharge. Ms. Frame notified the Unions about her sincere religious beliefs. But the Unions refused to accommodate her. The Unions instead, through counsel, disputed her religious beliefs' validity. They challenged her understanding of church doctrine, her belief

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 1.

Case 3:21-cv-00886   Document 1   Filed 11/24/21   Page 1 of 11 PageID #: 1

that joining or supporting the Unions violates her religious beliefs, and her parish priest who wrote a letter supporting Ms. Frame's accommodation request. After counsel for Ms. Frame contacted the Unions, and shortly before Ms. Frame filed a charge with the Equal Employment Opportunity Commission ("EEOC"), the Unions halted forced fee collections from Ms. Frame. But they never agreed to accommodate her or return the fees that they collected after Ms. Frame requested accommodation. Thus, the Unions obtained money from Ms. Frame in violation of her religious beliefs. And they refuse to accommodate her.

## II. Jurisdiction

2.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1337, and 1343. It has the authority to declare the rights of the parties under 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court under 28 U.S.C. § 1391 and 42 U.S. Code § 2000e-(f)(3). Ms. Frame's claims arose in Tennessee. The hospital where she works (Blanchfield Army Community Hospital) is physically located in the Tennessee section of Fort Campbell in Montgomery County, and her bargaining unit, which the Unions represent, is in Tennessee.

4.      The Unions conduct ongoing business in Tennessee. The Unions sought and secured the right to exclusively represent Tennessee employees—including Ms. Frame—in Ms. Frame's bargaining unit. The Unions negotiated and entered a contract to conduct business in Tennessee representing Tennessee employees. As part of the Unions' business

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 2.

in Tennessee, they discriminated against Ms. Frame—and the Unions continue to discriminate against Ms. Frame in Tennessee.

5.   Ms. Frame lives and works in Tennessee.

6.   On December 21, 2019, Ms. Frame filed charges with the EEOC against Laborers Local Union 576 and Laborers International Union of North America (See Exhibit A). On September 1, 2021, the EEOC issued Right to Sue letters against both Unions at Ms. Frame's request because more than 180 days elapsed since she filed her charges. (See Exhibits at B). Having exhausted her administrative remedies, Ms. Frame complied with the EEOC notice by suing with this Court within the ninety-day limitations period.

### III.  Parties

7.   Ms. Frame is an "employee" under 42 U.S.C. § 2000e(f).

8.   The Unions are "labor organization[s]" under 42 U.S.C. § 2000e(d) and (e).

### IV.  Facts:

9.   Ms. Frame performs cleaning services for the Blanchfield Army Community Hospital located on the Tennessee side of Fort Campbell.

10.   Ms. Frame works under a collective bargaining agreement that requires her to financially support the Unions or face discharge. The Unions maintain that this agreement does not violate the Tennessee Right to Work law because Fort Campbell is on a federal enclave. The Unions demanded that Ms. Frame financially support them or suffer

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 3.

discharge, and she agreed to join the Unions about six years ago and allowed her Employer to deduct dues from her paycheck.

11.   Ms. Frame became a member of the Catholic Church about four years ago. Sometime before July 2019, she discovered that the Unions fund and support abortion rights. Upon learning this, she decided that, based on her Catholic faith, she could no longer be a member of the Unions or financially support them.

12.   Ms. Frame believes that abortion is a grave sin. She believes joining or financially supporting the Unions would make her complicit in that sin because she believes that the Unions support and promote abortion. Thus, she believes that any money the Unions collect from her makes her complicit in sin and violates her religious beliefs.

13.   On July 25, 2019, Ms. Frame sent a letter informing the Unions of the conflict between her religious beliefs and the requirement that she join or pay the Union. She asked to stop supporting the Unions and requested a religious accommodation.

14.   Along with her request, Ms. Frame sent the Unions a letter from her priest— Father Richard D. Childress, III—supporting her request for a religious accommodation.

15.   In August 2019, the Unions responded to her accommodation request through counsel. Rather than attempting to accommodate Ms. Frame's religious beliefs, counsel for the Unions demanded that Ms. Frame prove that her beliefs "meet[] the standard for a 'legitimate justification.'" The Unions counsel declared that he was Catholic, and Ms. Frame's understanding of her faith was inferior to his own understanding *of her faith*. He wrote that he did not grasp Ms. Frame's religious beliefs because her beliefs are "not

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 4.

supported by Church doctrine." The letter concluded that her religious objection "does not appear well founded in [her] Roman Catholic faith." And the Unions' counsel closed by sending Ms. Frame—and her priest—remedial church readings.

16.   The Unions dismissed the letter from Ms. Frame's priest. In the Unions' August 2019 letter to Ms. Frame, the Unions' counsel asserted that her priest's letter "misses the point." It did not matter that Ms. Frame's objection was "of a religious nature," which the Unions conceded, because the Unions' counsel disagreed with Ms. Frame's religious beliefs. The Unions' counsel copied Ms. Frame's priest on the letter so he could also benefit from the remedial church readings that the Unions' counsel sent.

17.   On September 4, 2019, one of Ms. Frame's lawyers, Bruce N. Cameron, responded to the Unions' counsel. In his correspondence he provided more proof to support Ms. Frame's religious objections and Catholic faith. He showed that Ms. Frame's beliefs follow Catholic teaching based on, for example, Pope Leo XIII's encyclical *Longinqua* and other church doctrines. The correspondence provided further proof that the Unions support abortion rights.

18.   Despite Ms. Frame's accommodation request and the letter from one of her attorneys, the Unions continued to collect fees from Ms. Frame—and violate her religious beliefs—until her November 25, 2019 paycheck.

19.   In December 2019, Ms. Frame filed a discrimination charge with the EEOC against Laborers Local Union 576 and Laborers International Union of North America for failure to accommodate her religious beliefs.

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 5.

20. Before the EEOC, the Unions continued to challenge Ms. Frame's religious beliefs, and they refused to accommodate her—or offer any accommodation. They argued that Ms. Frame failed to prove her religious beliefs—to the Unions' satisfaction—and demanded that she prove how the Unions' support abortion rights, despite two more letters from Ms. Frame's counsel.

21. In April 2020, counsel for Ms. Frame responded to a request by the Unions demanding more proof and explained that Ms. Frame cannot join or support the Unions because they support, associate with, and endorse individuals and groups that promote abortion. And in June 2020, Ms. Frame's counsel sent a letter with over a dozen footnotes describing the various ways that the Unions are connected to and support abortion.

22. Yet in September 2020, after three letters from Ms. Frame's counsel addressing how the Unions are connected to abortion and support abortion, the Unions argued in their position statement to the EEOC that Ms. Frame failed "to explain how the Unions 'support abortion.'" So they claimed they could not accommodate her until she proves that her religious beliefs are valid.

23. The Unions refuse to accommodate Ms. Frame's sincere religious beliefs. Ms. Frame faces discharge without an accommodation.

24. The Unions have offered no accommodation, and they refuse to return any money they collected from Ms. Frame. Even though the Unions knew about Ms. Frame's religious beliefs in July 2019, they continued from July 25, 2019, through November 25, 2019, to deduct money and violate her religious beliefs.

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 6.

25.  Ms. Frame fulfilled all conditions precedent to the institution of this lawsuit.

## V. Causes of Action

## Count I: Religious Discrimination

26.  Ms. Frame incorporates the preceding paragraphs 1 – 25.

27.  Section 703(c) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2 (c)) prohibits a labor organization from discriminating against individuals because of their religious beliefs. Section 701(j) Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-(j)) defines religion to include an obligation to reasonably accommodate the religious beliefs of employees. *EEOC v. Abercrombie & Fitch*, 575 U.S. 768 (2015), eliminated religious accommodation as an independent cause of action, and instead required that it be pled as a disparate treatment claim.

28.  Ms. Frame is member of a protected category: she is a Catholic who believes that she must not join or financially support a labor union that she believes supports abortion. Ms. Frame believes that financing a labor union that supports abortion rights would make her complicit in what she considers is a grave sin.

29.  Ms. Frame is qualified for her position.

30.  The Unions discriminated against Ms. Frame by refusing to accommodate her religious beliefs and by deducting money from her pay when they knew that doing so would violate her religious beliefs.

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 7.

Case 3:21-cv-00886   Document 1   Filed 11/24/21   Page 7 of 11 PageID #: 7

31.  The Unions collected and continue to retain money from Ms. Frame violating her religious beliefs. And they refuse to accommodate and refund her.

32.  The Unions deliberately acted to avoid accommodating Ms. Frame, and they challenged and disparage her sincere religious beliefs.

33.  Ms. Frame faces discharge without an accommodation.

34.  The Unions violated Title VII's prohibition on religious discrimination and accommodation requirement by deducting money from Ms. Frame in violation of her religious beliefs, by refusing to accommodate Ms. Frame and return her money after she requested accommodation, by acting to avoid accommodating Ms. Frame, and by challenging and disparaging Ms. Frame's religious beliefs.

## Count II: Quid Pro Quo Religious Harassment

35.  Ms. Frame incorporates the preceding paragraphs 1 – 25.

36.  Ms. Frame's religious beliefs are protected against religious harassment by Title VII. Quid pro quo harassment occurs when an employee is asked to give up a protected right to avoid adverse action. A typical example is when a supervisor tells an employee that she must have unwanted sex, or she will be fired. The Unions likewise told Ms. Frame that she must pay the Unions money and violate her religious beliefs, or she will be fired.

37.  The involuntary deduction of union fees after she gave the Unions notice of her religious objections was unwelcome.

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 8.

38.   After learning about Ms. Frame's religious objections to joining or financially supporting the Unions, the Unions repeatedly collected and retained fees from Ms. Frame's paycheck.

39.   The payment of union fees is a condition of Ms. Frame's employment. She must join or pay the Unions compelled fees to keep her job.

40.   The Unions engaged in quid pro quo religious harassment in violation of Title VII by requiring Ms. Frame to pay the Unions to keep her job when the Unions knew that Ms. Frame could not do so without violating her religious beliefs.

## VI.  Prayer for Relief

Thus, Ms. Frame asks that this Court:

A.   Grant a permanent injunction enjoining the Unions, their officers, successors, assigns, affiliates, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates against Ms. Frame based on her religious beliefs.

B.   Grant a permanent injunction enjoining the Unions from demanding or collecting any fees from Ms. Frame.

C.   Declare that Ms. Frame has the right to a religious accommodation that alleviates her obligation to join or support the Unions.

D.   Require the Unions to repay Ms. Frame all fees that they collected from her after she notified them about her religious beliefs, together with interest.

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 9.

E. Require the Unions to pay Ms. Frame damages for emotional pain, suffering, and mental anguish that she suffered because the Unions repeatedly challenged and disparaged her religious beliefs and refused to accommodate her thus holding the sword of discharge over her head for the last two-and-a-half years.

F. Grant a permanent injunction requiring the Unions to inform all employees they represent that those with religious objections to union membership or union fees are entitled to a religious accommodation.

G. Award Ms. Frame her costs, including reasonable attorneys' fees.

H. Grant such further relief as the Court considers necessary and proper.

I. Retain jurisdiction of this action for a reasonable period after entering a final judgment to ensure that the Unions comply with this Court's orders and with Title VII's requirements.

Respectfully submitted,

s/Kristin Fecteau Mosher (TN Bar 019772)
The Law Office of Kristin Fecteau
5543 Edmonson Pike, #229
Nashville TN 37211
Telephone: (615) 496-5747
kristin@fecteaulaw.com

s/Bruce N. Cameron (DC Bar No. 380850)
s/Blaine L. Hutchison (VA Bar No. 93987)
*Pro Hac Vice Applications Forthcoming*
c/o National Right to Work Legal Defense
    Foundation, Inc.
8001 Braddock Road, Suite 600

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 10.

Springfield, Virginia 22160
Telephone: (703) 321-8510
bnc@nrtw.org
blh@nrtw.org

*Attorneys for Plaintiff Dorothy Frame*

COMPLAINT- *Frame v. Laborers Local Union 576, et al.,* PAGE- 11.